UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY OF NAPA, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-03210-TSH<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 71 |

## I.　INTRODUCTION

Defendant and Counter-Defendant Michael Venuta moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Defendant and Counter-Claimant First American Title Insurance Company's unjust enrichment claim against him.  ECF No. 71.  First American filed an Opposition (ECF No. 75)[1] and Venuta filed a Reply (ECF No. 77).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 18, 2021 hearing.  *See* Civ. L.R. 7-1(b).  Having considered the parties' arguments and the relevant legal authority, the Court **DENIES** Venuta's motion for the following reasons.

## II.　BACKGROUND

In February 2005 Venuta borrowed $1.3 million from Downey Savings and Loan secured by a deed of trust against the real property located at 589 Trancas Street, Unit C, Napa, California (the "Trancas Property").  First Am. Countercl. ¶¶ 12, 77, ECF No. 21.  The Downey deed of trust

---

[1] As part of its opposition, First American requests the Court take judicial notice of Venuta's January 22, 2018 Complaint filed in the Napa County Superior Court, Case No. 18CV000095, against First American Title Company of Napa, Lisa Mini, and In The Vines, LLC.  As the Court has not considered Venuta's Superior Court complaint as part of this order, First American's request is denied as moot.

was in first position. *Id.* In 2007 Venuta conveyed his interest in the Trancas Property to Defendant Lisa Mini, subject to the Downey Bank loan and deed of trust. *Id.* ¶ 79. However, Venuta did not assign the Downey Bank loan to Mini and it remained in his name. *Id.*

In August 2015 Mini conveyed title to the Trancas Property to her company In The Vines, LLC, of which Mini was the sole member and manager. *Id.* ¶¶ 67, 80. In September 2015 Downey Bank assigned the promissory note and deed of trust for Venuta's loan to US Bank, and an assignment of the promissory note and deed of trust was recorded. *Id.* ¶ 77.

In or around August 2017, In The Vines entered into an agreement to sell the Trancas Property to Benjamin Pham and Patricia Evangelista for approximately $2 million. *Id.* ¶ 82. Defendant First American Title Company of Napa ("FA Napa") handled the escrow and issued a First American owner's policy of title insurance in favor of Pham and Evangelista. *Id.* ¶ 88. FA Napa also issued a First American lender's policy of title insurance in favor of their lender, JP Morgan Chase Bank. *Id.* Neither policy excepted the US Bank deed of trust from coverage. *Id.* ¶ 89. FA Napa was an insured under Plaintiff General Star Indemnity Company's Miscellaneous Professional Liability Insurance Policy No. IJA324715A. Compl. ¶ 27, ECF No. 1.

FA Napa did not pay off the US Bank loan during escrow, and the US Bank deed of trust remained a lien on the Trancas Property. First Am. Countercl. ¶ 91. Instead, FA Napa mistakenly sent to Mini/In The Vines about $674,813.66 of the sales proceeds that should have been used to pay off the US Bank loan. *Id.* ¶ 92. Mini/In The Vines have refused to either return the misdirected funds or to use them to pay off the US Bank loan. *Id.* ¶¶ 94-95.

After US Bank initiated non-judicial foreclosure on the Trancas Property based on its deed of trust, Pham and Evangelista tendered a claim to First American under their owner's policy of title insurance. *Id.* ¶¶ 72, 130. First American investigated their claim and paid US Bank the remaining $674,813.66 obligation. *Id.* ¶¶ 130, 134.

On May 11, 2020, General Star filed a complaint for declaratory relief, bringing claims against First American, FA Napa, Venuta, Mini and In The Vines to determine the parties' rights and obligations under the insurance policy issued by General Star to FA Napa. Compl. ¶ 1.

On July 20, 2020, First American filed counterclaims against General Star, FA Napa, Mini,

In The Vines, and Venuta. It brings one claim against Venuta for unjust enrichment and seeks to recover from Venuta "at least" $674,813.66, alleging he was the obligor on the US Bank loan and "was legally obligated to make the payments on the US Bank loan, irrespective of whether Venuta had conveyed title to the Trancas Property to Mini, and irrespective of whether Mini might have made payments on the US Bank loan even though Mini was neither the borrower nor the obligor." First Am. Countercl. ¶¶ 168-76. First American claims its "payment *de facto* relieved Venuta of an obligation he otherwise [would] have been legally required to pay." First Am. Countercl. ¶ 174.

Venuta filed the present motion on February 10, 2021.

### III. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *Id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule

12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A district court generally may not consider materials outside the pleadings in deciding a motion under Rule 12(c), and if such materials are presented and not excluded, the motion must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). A district court may, however, consider the following materials without converting a Rule 12(c) motion to a Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

## IV. DISCUSSION

Venuta moves for judgment on the pleadings on three grounds: (1) First American was contractually obligated to pay off the missed US Bank mortgage, and it may not seek restitution from him as a third person who incidentally benefitted from First American's performance of its own duty; (2) First American never conferred a benefit upon him because the US Bank mortgage was in first position and US Bank was therefore required to pursue the secured real estate first rather than seek a deficiency judgment on the promissory note executed by Venuta; and (3) Venuta never had legal exposure because US Bank initiated a nonjudicial foreclosure, thus foregoing the possibility of a deficiency judgment. Mot. at 2-3.

### A. Unjust Enrichment

In California, a claim for unjust enrichment is an equitable cause of action with restitution as a remedy.[2] *1617 Westcliff LLC v. Wells Fargo Bank N.A.*, 686 F. App'x 411, 415 n.5 (9th Cir.

---

[2] While there is some disagreement as to whether California recognizes a stand-alone claim for unjust enrichment, other courts in this District have held that "a claim for unjust enrichment can properly be understood as one for restitution, which is recognized under California law." *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1121-22 (N.D. Cal. 2013); *see also Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *18 & n.7 (N.D. Cal. Jan. 3, 2011) (noting that "even if there is disagreement as to whether there is a claim for 'restitution,' the disagreement turns in large part on the label that is attached to the claim on which restitution is sought; while some courts refer to claims for 'restitution,' others label these claims according to the underlying theory attached to the claim. Whatever the label, the task for this Court is to determine whether Plaintiffs have stated a claim in support of their request for restitution.").

4

2017). The elements of a claim of unjust enrichment are (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996); *Lectrodryer v. Seoulbank*, 11 Cal. App. 4th 723, 726 (2000).

As to the first element, Venuta received a benefit from its payment of the US Bank loan, which extinguished $674,813.66 in personal debt. "The term 'benefit' 'denotes any form of advantage.'" *Ghirardo*, 14 Cal. 4th at 51. "Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." *Id.* (holding that an unjust enrichment claim allowed property sellers to recoup a sum they paid on underlying promissory note but inadvertently undercalculated amount owed by buyers). In other words, for a benefit to be conferred, it is "not essential that money be paid directly to the recipient by the party seeking restitution." *Cal. Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 132 (1992).

As to the second element, "the mere fact a person benefits another is not of itself sufficient to require the other to make restitution therefor. The recipient of the benefit is liable only if the circumstances are such that, as between the two persons, it is unjust for the recipient to retain it." *Id.* at 131 (citing Restatement (First) of Restitution N § 1 cmt. c). Still, a plaintiff need not establish bad faith on the part of the defendant, so long as the recipient of the funds was not entitled to the funds. *Lectrodryer*, 11 Cal. App. 4th at 726. Here, First American alleges it is unjust for Venuta to retain the benefit at its expense because he could have taken steps to remove himself from the US Bank loan but instead conveyed the Trancas Property to Mini subject to the US Bank loan/deed of trust without the lender's consent and without assigning the loan obligations. Venuta then failed to pay the US Bank loan when it became due on Mini/In the Vines' 2017 sale of the Trancas Property. After First American paid US Bank $674,813.66 to prevent the foreclosure sale and cure the title defect, First American's payment extinguished Venuta's $674,813.66 obligation on the US Bank loan as if Venuta has paid it off himself, providing him with a windfall in the form of the extinguishing $674,813.66 in personal debt. Taking these facts as true, the Court finds First American pleads enough facts to state a claim to relief that is plausible on its face. Though Venuta was not the sole cause of First American's loss, that is not relevant for the imposition of unjust enrichment liability. What is important is that as

between First American and Venuta, it is unjust for Venuta to retain the benefit conferred upon him by First American. *See Cal. Fed. Bank*, 8 Cal. App. 4th at 131; *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013) (allowing restitution claims to proceed against defendants with whom the plaintiffs had no contract, finding they adequately pled that defendants unjustly received and retained a benefit from plaintiffs in the form of the insurance premiums plaintiffs paid); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1664 (1992) (holding that a cause of action for unjust enrichment can be stated if the defendant knew, or should have known, that the deed of trust was mistakenly reconveyed and that it was not entitled to all the proceeds of the sale, reasoning that restitution may be required when the person benefiting from another's mistake knew about the mistake and the circumstances surrounding the unjust enrichment).

**B.     Whether Venuta is Liable for Unjust Enrichment Given First American's Obligation to Prevent a Loss to Pham/Evangelista**

Venuta argues that First American cannot seek restitution from him because it was contractually obligated to pay off the US Bank loan. Mot. at 5. Contrary to Venuta's assertion, the Court is unaware of a general rule that where a party makes a payment or incurs an expense due to a legal obligation, that party is precluded from claiming unjust enrichment from a defendant who received a material benefit through that payment. The cases on which Venuta relies are distinguishable. In *Dinosaur Development, Inc. v. White*, after plaintiff Dinosaur Development submitted a plan to construct three single-family residences on its property and construct a road onto its property, defendants Elma and Lewis White demanded and received approval from the government agency reviewing the plan requiring that Dinosaur ensure access to the road for their property. 216 Cal. App.3d 1310, 1313-14 (1989). Dinosaur brought an action for restitution, seeking recovery of the increased value of the Whites' property and the cost of construction. *Id.* at 1314. The court concluded that no restitution was warranted, finding that "the mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Id.* at 1315 (quoting Restatement (First) of Restitution N § 1 cmt. c ("Thus, one who improves his own land ordinarily benefits his neighbors to some extent, and one who makes a gift or voluntarily

6

pays money which he knows he does not owe confers a benefit; in neither case is he entitled to restitution")); *see also id.* at 1319 ("[W]ithin the limits of the police power some uncompensated hardships must be borne by individuals as the price of living in a modern enlightened and progressive community"). *Dinosaur*, therefore, stands for the proposition that there are many expenses that must be incurred that are not compensable through restitution even if they benefit another. It did not involve facts where, as here, the defendant's own default or breach of a legal obligation created (in whole or part) the facts that forced the plaintiff to make the payment giving the defendant the windfall/unjust enrichment. First American was required to pay US Bank the $674,813.66 balance owed by Venuta in part because he conveyed the Trancas Property to Mini without transferring the loan obligations, after which he did not pay the loan when In the Vines sold the Trancas Property, resulting in a default. In other words, based on First American's allegations, Venuta did not fortuitously benefit from First American repayment of the US Bank loan – he in part caused the loss by not repaying his own loan when it became due.[3]

Venuta also cites *Major-Blakeney Corp. v. Jenkins*, noting the court there stated: "The expenditures made and obligations paid were done exclusively in furtherance of plaintiff's own interest and to discharge commitments for which it alone was responsible." 121 Cal. App. 2d 325, 340-41 (1953). The plaintiff/developer in *Major-Blakeney Corp.* claimed unjust enrichment against an adjacent landowner, whose land benefitted from improvements the plaintiff made for its development. *Id.* at 331, 338-39. Importantly, the defendant had not caused the plaintiff to make those improvements and had not agreed to participate in the costs. The court held that the plaintiff was not entitled to unjust enrichment/restitution if the defendant's property received an incidental benefit from the improvements plaintiff paid for pursuant to its own private development plans. *Id.* at 340-41. Even beyond these distinguishing facts, the language in *Major-Blakeney Corp.* that Venuta quotes does not apply here: the $674,813.66 obligation that First American paid was not to

---

[3] Venuta also cites *PSM Holdings Corp. v. National Farm Financial Corp.*, 743 F. Supp. 2d 1136 (C.D. Cal. 2010) because it is a district court decision that cited *Dinosaur Development* with approval. Mot. at 6. But Venuta does not explain how *PSM Holdings Corp.* applies here – and it does not. If anything, the district court's summary of the *Dinosaur Development* decision further illustrates how that case is not analogous and thus does not support Venuta's motion.

7

1   "discharge commitments for which [First American] alone was responsible." Venuta was
2   responsible for paying the loan, and his non-payment was a cause of First American needing to
3   pay the US Bank loan.
4         Venuta's argument also ignores that First American's repayment of the US Bank loan –
5   under its contractual obligation to Pham/Evangelista – subrogated First American to
6   Pham/Evangelista's rights. *See Hodge v. Kirkpatrick Dev., Inc.*, 130 Cal. App. 4th 540, 548
7   (2005) ("Under the doctrine of subrogation, when an insurer pays money to its insured for a loss
8   caused by a third party, the insurer succeeds to its insured's rights against the third party in the
9   amount the insurer paid."). First American, therefore, "steps in to the shoes of its insured,"
10  Pham/Evangelista. *Id.* Had Pham/Evangelista either repaid the loan themselves in order to avoid
11  foreclosure or lost their home to foreclosure, they would have had claims for relief against Venuta,
12  including for unjust enrichment.

13  **C.   California's Statutory Scheme Governing Recovery of Real Estate Secured Debt**

14        Venuta argues that his lender, US Bank, could not have recovered a money judgment
15  against him personally because the Trancas Property securing the loan was worth far more than
16  the debt he owed. Mot. at 6-7. He cites California's "one form of action" and "security first"
17  rules for the proposition that US Bank was required to first seek recovery for the debt against the
18  security before seeking the shortfall, or the "deficiency," from the borrower. *Id.* The result,
19  according to Venuta, is that he would never have had liability for a personal money judgment if
20  US Bank proceeded with foreclosure, and First American therefore did not confer a benefit upon
21  him by repaying the US Bank loan. *Id.* Venuta further asserts that because California prohibits
22  money judgments for the shortfall (or "deficiency") remaining on real estate secured loans after
23  non-judicial foreclosure sales of real property security, he would never have been personally liable
24  for a money judgment because US Bank had initiated non-judicial foreclosure proceedings on the
25  Trancas Property. *Id.* at 7-8. Again, Venuta argues that this means First American's repayment of
26  the US Bank loan conferred no benefit on him. *Id.* at 8.

27        Enforcement of a real estate secured loan in California is limited to "one form of action,"
28  meaning a lender may only pursue one action in enforcing such a debt. Cal. Civ. Proc. Code §

726(a). Section 726(a) further specifies that the lender must look first to the security by way of foreclosure when enforcing debt. *Id.* In this way, California law mandates that the lender only bring one action to recover a real estate secured debt, and that "action" is the sale of the real property by way of foreclosure, applying the sale proceeds to repay the debt.

A "deficiency" is the shortfall, or balance, left on a real estate secured loan after the real property security has been sold by way of foreclosure. *See First Nationwide Savings*, 11 Cal. App. 4th at 1664. Real estate secured lenders in California are prohibited from recovering deficiency judgments against borrowers after the real property security is sold at a "non-judicial" foreclosure sale (i.e., a trustee's sale authorized by the power of sale provisions contained in most deeds of trust):

> Except as provided in subdivision (b), no deficiency shall be owed or collected, and no deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust or mortgage on real property or an estate for years therein executed in any case in which the real property or estate for years therein **has been sold** by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

Cal. Civ. Proc. Code § 580d(a) (emphasis added).

If a lender seeks a money judgment against the borrower without first foreclosing on the real property security, then the borrower/defendant may use section 726(a) as either an affirmative defense or as a sanction. *Sec. Pac. Nat. Bank v. Wozab*, 51 Cal. 3d 991, 997 (1990) ("section 726 is susceptible of a dual application — it may be interposed by the debtor as an affirmative defense or it may become operative as a sanction."). By raising section 726(a) as an affirmative defense, the debtor forces the lender to initiate foreclosure proceedings before seeking its monetary judgment. If, however, the borrower/defendant does not raise section 726(a) as an affirmative defense, the lender may pursue the borrower for the debt. *In re DiSalvo*, 221 B.R. 769, 774 (B.A.P. 9th Cir. 1998), *vacated in part, appeal dismissed in part*, 219 F.3d 1035 (9th Cir. 2000). If the lender elects the remedy of monetary judgment against the borrower, the borrower may thereafter raise section 726(a) as a sanction. If the sanction is triggered, the lender is said to have lost its security. *Walker v. Cmty. Bank*, 10 Cal. 3d 729, 734–36 (1974); *James v. PCS Ginning Co.*, 276 Cal. App. 2d 19, 22 (1969) ("Since there can be but one form of action, under section

1   726, the courts have established that where a creditor elects to obtain a personal money judgment

2   rather than enforce his mortgage, the effect of the election is to waive the right to foreclose on his

3   security."). The lender is thereby left with only its judgment against the borrower to recover the

4   debt and may not foreclose on the real property security. *Id.*

5         A lender who initiates an action against the borrower does not elect his remedy prior to

6   judgment and may amend his complaint to include a cause of action for judicial foreclosure (or

7   initiate non-judicial foreclosure proceedings) any time before it elects its remedy. *Kirkpatrick v.*

8   *Westamerica Bank*, 65 Cal. App. 4th 982, 990 (1998). Similarly, the prohibition against

9   deficiency judgments is not effective until the completion of the non-judicial foreclosure (i.e.,

10  trustee's) sale of the real property security. Cal. Civ. Proc. Code § 580d(a). Any time prior to the

11  sale, the lender may decide to proceed by way of action against the borrower for money judgment

12  (subject to the borrower's election of section 726(a) as an affirmative defense or sanction) or

13  judicial foreclosure (after which a deficiency judgment is permitted subject to statutory

14  constraints).

15        Here, Venuta asserts that even if First American had not repaid the US Bank loan, he

16  would have been relieved of any personal liability for repayment under California law. As a

17  threshold matter, Venuta's argument appears to be hypothetical. Under the facts as alleged, US

18  Bank did not conduct a trustee's sale (i.e., non-judicial foreclosure sale), because after Venuta

19  defaulted and declined to repay the loan himself, and US Bank took initial steps toward

20  foreclosure, First American paid off the loan to save the Trancas Property from foreclosure. US

21  Bank could have taken different actions in pursuing its security and/or Venuta, and Venuta would

22  have had defenses to raise to those actions. US Bank completing a non-judicial foreclosure sale

23  on its deed of trust was one just potential outcome. Moreover, First American was not the secured

24  lender and is not asserting the rights of the lender. Rather, as discussed above, First American has

25  stepped into Pham/Evangelista's shoes, pursuant to its right of subrogation. Had

26  Pham/Evangelista either repaid the US Bank loan or lost their home to foreclosure due to Venuta's

27  non-payment, they would have had claims against Venuta, including for unjust enrichment. First

28  American now seeks to enforce Pham/Evangelista's rights under those claims.

10

1       Further, while section 726(a) requires the lender on a real estate secured loan to seek
2   repayment of the debt by foreclosure on the real property, the lender may, nonetheless, seek
3   recovery from the borrower, so long as the lender accepts the consequences of that action, to wit,
4   loss of its security. *Sec. Pac. Nat. Bank*, 51 Cal.3d at 997. Thus, a lender such as US Bank is free
5   to pursue a money judgment from the borrower on a loan secured by a deed of trust, accepting the
6   consequence that it will lose the ability to foreclose on the real property security once a money
7   judgment is entered against the borrower. *Id.*

8       Even accepting Venuta's hypothetical, his argument takes too narrow a view of the
9   "benefit" conferred by the extinguishment of his debt. If US Bank were unable to recover the loan
10  funds directly from Venuta, the fact that Venuta was no longer obligated on a $675,000 loan and
11  had no consequences for his non-payment and default was inherently a "benefit." *See, e.g.*
12  *Ghirardo*, 14 Cal. 4th at 51; *Cal. Fed. Bank*, 8 Cal. App. 4th at 132 (in terms of an unjust
13  enrichment claim, "benefit" means any form of advantage, and is not limited to money paid to the
14  recipient by the party seeking restitution). While the value of any such benefit is a matter for
15  proof at the time of trial, First American need not prove its claims at this stage.

16      Finally, because "unjust enrichment claim[s] [are] based upon equitable principles," the
17  California Court of Appeal has held that the legislative scheme limiting recovery on real estate
18  secured debts is not a bar to claims for unjust enrichment. In *First Nationwide Saving*, the court
19  held that although a secured lender might have been precluded from seeking a deficiency
20  judgment against a property owner if it had pursued non-judicial foreclosure on its deed of trust,
21  that lender could still allege an unjust enrichment claim against an owner who had a received a
22  windfall because the senior lender's deed of trust mistakenly had been reconveyed. 11 Cal. App.
23  4th at 1664-69. First Nationwide had a first priority deed of trust securing a mortgage loan.
24  Lender Sunrise Trust made a loan secured by a second priority deed of trust on the same real
25  property. Sunrise Trust later held a trustee's sale under its deed of trust and took title subject to
26  First Nationwide's senior deed of trust. *Id.* After Sunrise Trust took title, the trustee on First
27  Nationwide's deed of trust mistakenly reconveyed the deed of trust. Sunrise Trust then sold the
28  property to new purchasers and kept all the sale proceeds without paying off the First Nationwide

loan. *Id.* First Nationwide sued Sunrise Trust, including for unjust enrichment. *Id.* at 1661-62. Sunrise Trust brought a demurrer to the complaint, which the trial court sustained without leave to amend. *Id.* at 1662. The appellate court reversed, reasoning that "permitting recovery for unjust enrichment and recovering a deficiency judgment are not the same," and the policy reasons for requiring lenders to pursue the "security first" was not applicable to the circumstances of that case. *Id.* at 1664-65. The court further reasoned that under California law "an unjust enrichment claim is based upon equitable principles. These equitable principles may outweigh the reasons for prohibiting deficiency judgments." *Id.* at 1665. It then concluded that First Nationwide could state a claim for unjust enrichment if it alleged that Sunrise Trust had knowledge that First Nationwide's deed of trust was mistakenly conveyed (which knowledge was probable) and that Sunrise Trust was not entitled to all of the sale proceeds. *Id.* at 1669-70. The court thus rejected Sunrise Trust's argument that unjust enrichment is per se precluded where the plaintiff might have been barred from pursuing a debtor individually under California's statutory scheme limiting a secured lender's remedies against a borrower. *Id.* at 1669 ("Sunrise stresses that unjust enrichment recovery would be contrary to secured transactions law and restitution law. As we have already explained, this is incorrect.").

In sum, the Court finds that First American has stated facts sufficient to state a claim against Venuta for unjust enrichment as a matter of law and California's laws governing recovery of real estate secured debt also do not save him from liability.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Venuta's motion for judgment on the pleadings.

**IT IS SO ORDERED.**

Dated: March 10, 2021

THOMAS S. HIXSON
United States Magistrate Judge