UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY OF NAPA, et al.,<br><br>Defendants. | Case No. 20-cv-03210-TSH<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 80 |

## I.     INTRODUCTION

This action arises from a real property transaction whereby certain defendants are alleged to have mistakenly received and retained approximately $675,000 meant to pay off a loan on the property. Pending before the Court is Defendant, Cross-Claimant and Counterclaimant First American Title Insurance Company's Motion for Leave to File Amended Counterclaim pursuant to Federal Rule of Civil Procedure 15(a). ECF No. 80. No opposition has been filed. The Court finds this matter suitable for disposition without oral argument and **VACATES** the April 22, 2021 hearing. *See* Civ. L.R. 7-1(b). Having considered the relevant legal authority and the record in this case, the Court **GRANTS** First American's motion for the following reasons.

## II.     BACKGROUND

First American is a title insurance company. Countercl. ¶ 85, ECF No. 21. Defendant and Counter-Defendant First American Title Company of Napa ("FA Napa"), which is not an affiliate of First American, is an independently-owned company in northern California authorized to issue title insurance policies underwritten by First American in certain counties pursuant to a limited agency agreement with First American. *Id.* ¶¶ 86-87. FA Napa was an insured under Plaintiff

General Star Indemnity Company's Miscellaneous Professional Liability Insurance Policy No. IJA324715A.  Compl. ¶ 27, ECF No. 1.

In 2005 Defendant and Counter-Defendant Michael Venuta owned real property commonly known as 589 Trancas Street, Unit C, Napa, California (the "Trancas Property"). Countercl. ¶¶ 67, 77.  In February 2005 he borrowed $1.3 million from Downey Savings and Loan secured by a first position deed of trust against the Trancas Property.  *Id.* ¶ 77.  In 2007 Venuta conveyed his interest in the Trancas Property to Defendant and Counter-Defendant Lisa Mini, subject to the Downey Bank loan and deed of trust.  *Id.* ¶ 79.  Venuta did not assign the Downey Bank loan to Mini, nor was he otherwise relieved of his loan obligations, and he remained a legal obligor on the loan after conveying title to Mini.  *Id.*

In August 2015 Mini conveyed title to the Trancas Property to her company, Defendant and Counter-Defendant In The Vines, LLC, of which Mini was the sole member and manager.  *Id.* ¶¶ 67, 80.  In September 2015 Downey Bank assigned the promissory note and deed of trust for Venuta's loan to US Bank, and an assignment of the promissory note and deed of trust was recorded.  *Id.* ¶ 77.

Two years after Mini conveyed title to Vines, Mini/Vines listed the Trancas Property for sale.  *Id.* ¶ 82.  In August or September 2017, Mini/Vines entered into a residential purchase agreement to sell the Trancas Property to Benjamin Pham and Patricia Evangelista for a little over $2 million.  *Id.*  First American alleges that when Mini/Vines entered into the purchase agreement with Pham/Evangelista, and for many years before that, Mini knew about the US Bank loan and the US Bank deed of trust, and that Mini/Vines were required to disclose them to Pham/Evangelista.  *Id.* ¶¶ 79, 81, 83.  However, Mini/Vines did not disclose the US Bank loan or deed of trust.  *Id.* ¶ 84.

Mini/Vines and Pham/Evangelista used FA Napa as their escrow-services provider for the sale, and Pham/Evangelista purchased their owner's policy of title insurance from FA Napa.  *Id.* ¶¶ 86-87.  FA Napa thus issued two First American title insurance policies for Vines' sale of the Trancas Property to Pham/Evangelista: (1) an owner's policy to Pham/Evangelista; and (2) a lender's policy to Pham/Evangelista's lender, JP Morgan Chase Bank.  *Id.* ¶ 88.  Mini/Vines did

not inform FA Napa that the US Bank loan needed to be paid off as part of the sale. *Id.* ¶ 91. FA Napa performed its own examination of the title in issuing these policies. *Id.* ¶ 88. Neither title insurance policy excepted the US Bank deed of trust from coverage. *Id.* ¶ 89.

Mini/Vines' sale of the Trancas Property to Pham/Evangelista closed on September 27, 2017. *Id.* ¶ 92. As of the closing, Mini/Vines had not instructed FA Napa to pay off the US Bank loan with sale proceeds. *Id.* ¶¶ 15, 91. As a result, Mini/Vines received $675,493.65 in sale proceeds that should have been paid to US Bank. *Id.* ¶¶ 84, 92.

FA Napa learned in November 2017 that Mini/Vines had received approximately $675,000 in sale proceeds to which neither Vines nor Mini was entitled, at which point it demanded that Mini/Vines return the money or use it to pay the US Bank loan. *Id.* ¶ 94. Mini/Vines have refused to either return the misdirected funds or to use them to pay off the US Bank loan. *Id.* ¶¶ 94-95.

After the sale, neither Venuta nor Mini/Vines made further payments to US Bank, and the loan went into default. *Id.* ¶ 98. In June 2018 US Bank initiated non-judicial foreclosure proceedings. *Id.* Pham/Evangelista then tendered a claim to First American under their owners' title insurance policy; First American investigated Pham/Evangelista's claim and determined there was coverage. *Id.* ¶ 99. In July 2018, JP Morgan Chase Bank also tendered a claim to First American under its lender's title insurance policy; First American determined there likely would be coverage if/when US Bank foreclosed. *Id.* ¶ 100.

On August 30, 2018, First American paid US Bank $674,813.66 to satisfy the remaining obligation on the US Bank loan and prevent non-judicial foreclosure (i.e., a trustee's sale) of the Property. *Id.* ¶ 101. A deed of reconveyance of the US Bank deed of trust was recorded in September 2018. *Id.* First American's payment of the US Bank loan provided title as insured to Pham/Evangelista and met its obligations to Pham/Evangelista under their title insurance policy. *Id.*

Because First American paid the US Bank loan obligation pursuant to the title policies, First American is subrogated to the rights of its insureds, including Pham/Evangelista. *Id.* ¶¶ 101-04.

On May 11, 2020, General Star filed a complaint for declaratory relief, bringing claims

1  against First American, FA Napa, Venuta, Mini and Vines to determine the parties' rights and

2  obligations under the insurance policy issued by General Star to FA Napa. Compl. ¶ 1. On July

3  20, 2020, First American filed its answer and brought counterclaims against General Star, FA

4  Napa, Mini, In The Vines, and Venuta. First American alleges counterclaims against Mini for: (1)

5  constructive trust; (2) unjust enrichment/restitution; (3) conversion; (4) unfair business

6  practices/restitution; and (5) breach of the purchase/sale agreement.

7  On November 3, 2020, the Court issued a case management scheduling order, setting the

8  following deadlines:

| | |
|---|---|
| Deadline to Seek Leave to Amend Pleadings | 4/19/2021 |
| Close of Fact Discovery | 6/18/2021 |
| Disclosure of Expert Witnesses | 7/15/2021 |
| Disclosure of Rebuttal Expert Witnesses | 8/12/2021 |
| Close of Expert Discovery | 9/9/2021 |
| Deadline to File Dispositive Motions | 10/14/2021 |
| Hearing on Dispositive Motions | 11/18/2021 |
| Exchange of Pretrial Disclosures | 1/12/2022 |
| Deadline to File Pretrial Documents | 1/27/2022 |
| Deadline to File Oppositions to Motions in Limine | 2/3/2022 |
| Pretrial Conference | 2/17/2022 |
| Final Pretrial Conference | 3/17/2022 |
| Jury Trial (Duration to be determined) | 3/28/2022 |

22  ECF No. 64.

23  First American filed the present motion on March 18, 2021. In its proposed amended

24  counterclaim, First American alleges that on October 2, 2017, Mini created AZL, LLC, organized

25  in Wyoming. Mircheff Decl., Ex. A (Prop. Am. Countercl.) ¶ 100, ECF No. 81. Mini is the sole

26  member and manager of AZL. *Id.* First American alleges Mini formed and used AZL to transfer

27  and hide the monies that she received from the sale of the Trancas Property to make it more

28  difficult for FA Napa or First American to recover those monies. *Id.*

4

First American also alleges that Mini/Vines had been the owner of real property located at 1070 Silverado Trail, Napa, California, 94588 (the "Silverado Property") since at least 2015. *Id.* ¶ 103. On November 11, 2017, Mini created another entity – Light Castle Family Management, LLC – also organized in Wyoming, and for which Mini is a member and manager. *Id.* ¶ 101. On December 17, 2017, Mini/Vines transferred the Silverado Property to Light Castle. *Id.* ¶ 105. Mini/Vines received – and Light Castle paid – no consideration for transfer of the Silverado Property. *Id.*

Through its proposed amended counterclaim, First American seeks to: (1) adds claims for avoidance and recovery of fraudulent transfer against Mini and Vines, as well as new counter-defendants Light Castle Private Family Management Company, LLC and AZL, LLC based on (a) the transfer of proceeds from the September 2017 sale of the Property, and (b) Mini/Vines's December 19, 2017 conveyance of the real property at 1070 Silverado Trail, Napa to Mini's newly-created entity Light Castle for no consideration; (2) add Light Castle and AZL as counter defendants to the fraudulent transfer claims for relief; (3) add alter ego allegations as to Mini and Light Castle, and Mini and AZL; and (4) add factual allegations supporting the new claims for relief, claims against new counter-defendants Light Castle and AZL, and alter ego allegations as to Mini and Light Castle, and Mini and AZL.

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course within 21 days of serving it. Further amendment of the pleadings is allowed with the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a)(2). The Court considers five factors in deciding a motion for leave to amend: (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). The rule is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (simplified). Generally, a court should determine whether to grant leave indulging "all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp.,*

5

*Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

### A.   Bad Faith and Undue Delay

As to the first two factors, the Court finds the proposed amendment is not sought in bad faith or with a dilatory motive. The instant action was filed on May 11, 2020, and First American filed its original counterclaim on July 20, 2020. Since then, First American has learned through the discovery process that Mini/Vines may have attempted to hide material assets by transfers to new entities owned and/or controlled by Mini, including AZL and Light Castle. Because this information was not known at the time it filed its counterclaim, there is no evidence that First American has unduly delayed bringing this motion. *See Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early).

Further, there appears to be no bad faith in seeking the requested amendments because, as alleged, Mini/Vines came in to approximately $675,000 to which they had no right, refused to return those funds, and took steps to put both those funds out of reach of their creditors. First American seeks to protect its rights and ensure that defendants – Mini and Vines in particular – are not permitted to further divest themselves of significant assets to avoid satisfying a later judgment.

Accordingly, these factors favor granting leave to amend.

### B.   Prejudice to the Opposing Party

[I]t is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). However, "[t]o overcome Rule 15(a)'s liberal policy with respect to the amendment of pleadings a showing of prejudice must be substantial." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010) (citing *Genentech, Inc. v. Abbott*

*Lab'ys*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989)).

Here, the deadline to seek leave to amend pleadings is April 19, 2021, and trial is not set to commence for nearly 12 months. While there will likely be additional discovery on these new claims, there is no indication that it will be so extensive as to prejudice any parties' ability to prepare for trial. Further, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Mendia v. Garcia*, 165 F. Supp. 3d 861, 874 (N.D. Cal. 2016) (quoting *Tyco Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009)). Accordingly, the Court finds there is no undue prejudice, and this factor also favors granting leave to amend.

### C.   Futility of Amendment

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). As the Supreme Court has held, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.'" *Foman*, 371 U.S. at 182. The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Miller*, 845 F.2d at 214.

To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted) (quotation marks omitted).

First American seeks leave to file the amended counterclaim to add claims under California's Uniform Voidable Transactions Act, which governs transactions voidable by present

7

or future creditors. "There are two theories under which a [creditor] may proceed under [section 3439.04]: actual fraud or constructive fraud." *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (applying California law). Under the former theory, a plaintiff must show "actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). The statute provides a number of non-exclusive factors may be considered in assessing intent:

> (1) Whether the transfer or obligation was to an insider.
>
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
>
> (3) Whether the transfer or obligation was disclosed or concealed.
>
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>
> (5) Whether the transfer was of substantially all the debtor's assets.
>
> (6) Whether the debtor absconded.
>
> (7) Whether the debtor removed or concealed assets.
>
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
>
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
>
> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
>
> (11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

*Id.* § 3439.04(b). "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets," and is presumed to be insolvent if the debtor "is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute." *Id.* § 3439.02(a)-(b).

As an alternative to showing actual intent to hinder, delay, or defraud, a plaintiff may also prevail on a theory of constructive fraud by showing that the debtor transferred property or incurred an obligation "[w]ithout receiving equivalent value in exchange" and at least one of the following: either the debtor "[w]as engaged or was about to engage in a business or a transaction

8

for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *Id.* § 3439.04(a)(2). The statute defines "value" as follows:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

*Id.* § 3439.03.

A creditor may bring "an action for relief against a transfer or obligation" that meets one of the tests above, for remedies including but not limited to "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" and, subject to principles of equity and applicable rules of procedure, "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or other property of the transferee." *Id.* § 3439.07(a).

Here, taking First American's allegations as true, the Court finds that Mini/Vines's transfers of the Silverado Property to Light Castle and the wrongfully retained sale proceeds to AZL meet several of the factors evidencing that Mini/Vines intended to hinder, defraud or delay First American and others (such as FA Napa) seeking to recover the funds. For example, the transfers were to insiders (i.e., entities created and controlled by Mini), and Mini/Vines therefore retained control over the assets; the transfers were made after demand for return of the funds; and there was no consideration given for either transfer. *See* Prop. Am. Countercl. ¶¶ 198-219. First American has further alleged that these transfers rendered Mini/Vines insolvent as set forth in section 3439.04(a)(2). *See id.* The amended counterclaim includes four new claims pursuant section 3439.04:

- Avoidance and recovery of fraudulent transfer (Actual Fraud) against Mini, Vines and Light Castle related to Mini/Vines's transfer of the Silverado Property to Light Castle;
- Avoidance and recovery of fraudulent transfer (Constructive Fraud) against Mini, Vines and Light Castle related to Mini/Vines's transfer of the Silverado Property to Light Castle;

- Avoidance and recovery of fraudulent transfer (Actual Fraud) against Mini, Vines and AZL related to Mini/Vines's transfer of funds to AZL; and

- Avoidance and recovery of fraudulent transfer (Constructive Fraud) against Mini, Vines and AZL related to Mini/Vines's transfer of funds to AZL.

*Id.* To bring a claim under the UVTA, a creditor must affirmatively show prejudice as a result of the challenged transfer. *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001). The transfer must cause "property [the plaintiff] otherwise would be able to subject to the payment of [the plaintiff's] debt" to be placed "beyond [the plaintiff's] reach." *Id.* (simplified). First American alleges it paid US Bank $674,813.66 to satisfy the remaining obligation on the US Bank loan and prevent non-judicial foreclosure of the Trancase Property, Countercl. ¶ 101, and that Mini formed and used AZL and Light Castle to transfer and hide the monies that she received from the sale of the Trancas Property to make it more difficult for FA Napa or First American to recover those monies, Prop. Am. Countercl. ¶¶ 100-05. Based on these allegations, the Court finds First American's proposed amendments do not appear to be futile or legally insufficient. Therefore, this factor favors granting leave to amend.

### D.     Previous Amendments

Although courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted, *see Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation omitted), First American has not previously amended its counterclaim. Therefore, this factor also favors granting leave to amend.

### V.     CONCLUSION

As all *Foman* factors favor allowing the proposed amendment, the Court **GRANTS** First American's motion for leave to file amended counterclaim. First American shall e-file the amended counterclaim by April 9, 2021.

**IT IS SO ORDERED.**

Dated: April 7, 2021

THOMAS S. HIXSON
United States Magistrate Judge

10